**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
DOMINIC DENNARD,

                              Petitioner,

                              -v.-                                    9:09-CV-1192
                                                                      (GLS)

WILLIAM LEE,

                              Respondent.
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PETITIONER:**

**DOMINIC DENNARD**
Petitioner, *pro se*
04-B-0651
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**            **LEA L. LA FERLITA, Esq.**
New York State Attorney General      Assistant Attorney General
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER**

I.    **BACKGROUND**

      A.    **State Court Proceedings**

      According to the evidence adduced at trial, on January 20, 2002 at approximately 6:55

p.m., Simeon Popov, who was working as a delivery person for a local pizzeria in Syracuse, New

York, had among his deliveries a scheduled delivery at the residence of Benjamin Ferrari on

Ostrom Avenue in Syracuse, New York.  *See* Transcript of Trial of Dominic Dennard (1/12/03) (Dkt. Nos. 11-47 through 11-63) ("Trial Tr.") at pp. 1032-34, 1600.  While the people in the residence were waiting for the delivery, an intruder, later identified at trial as petitioner, *pro se* Dominic Dennard, entered the apartment brandishing a handgun and wearing a hooded mask with a cutout for the eyes.  *Id.* at pp. 1527-28.  Dennard ordered the apartment's occupants onto the floor at gunpoint and directed them to empty their pockets.  *Id.* at pp. 1528-30.  Dennard then began searching the apartment for money or drugs.  *Id.* at p. 1536.

Around this time, there was a knock at the apartment door.  *Id.* at p. 1541.  Dennard opened the door and Popov walked in to deliver the food that had been ordered for the apartment.  *Id.* at pp. 1540-41.  Dennard then ordered Popov to get on his knees and empty out his pockets.  *Id.* at pp. 1542-43.  Appearing confused, Popov told Dennard he had to go back to work.  *Id.* at p. 1542.  Dennard placed his gun to Popov's chest and pulled the trigger, however the gun jammed.  *Id.* at p. 1543.  Dennard pointed the gun at Popov a second time, however, and succeeded in shooting him in the face.  *Id.* at pp. 1543-44.  One of the men in the apartment was then directed to empty out Popov's pockets as he lay mortally wounded on the floor.  *Id.* at p. 1544.  The contents of Popov's pockets, money and jewelry stolen from the occupants of the apartment, as well as a video game console together with its controls, were all placed in a duffel bag which Dennard grabbed just before he left the apartment.  *Id.* at pp. 1544-46.  One of the individuals in the apartment called 911 after Dennard had left and the police and paramedics soon arrived at the scene.  *Id.* at p. 1547.  Paramedic Brian Brooks found that Popov, who was unconscious, had no pulse and was not breathing as he was transported from the scene to a local hospital.  *Id.* at pp. 1021-22.

2

After questioning the individuals who were present in the apartment when the crime occurred, the police began looking for an individual named Robert Adams. *Id.* at p. 2048. Just before noon on January 21, 2002, Adams was questioned by the police about Popov's death. *Id.* at p. 2054-59. During that interview, Adams told the police that prior to that homicide, Dennard was with Adams when Ferrari called Adams seeking to buy a large amount of marijuana. *Id.* at pp. 2064, 2083-84. Adams informed law enforcement agents that he and Dennard then made arrangements to rob Ferrari on January 20, 2002, *id.* at p. 2084, the date on which Ferrari was to obtain drugs from Adams. *Id.* at p. 1614. At trial, Adams testified that on the day of the homicide, he drove Dennard to Ferrari's apartment so that Dennard could rob Ferrari. *Id.* at pp. 3234-35. At that time, Adams parked a short distance away from Ferrari's apartment and Dennard told Adams to wait in his car. *Id.* at pp. 3236-39. After a brief period of time, Dennard walked up to Adams' car, placed a black duffel bag in the back seat and entered the passenger side of the automobile. *Id.* at pp. 3241-42. When Adams asked Dennard what transpired during the course of the robbery, he replied "I think I killed the delivery guy." *Id.* at pp. 3242-43.

Shakima Hilton testified that she was Adams' girlfriend in 2002, and that on January 20, 2002, she observed Dennard and Adams leave her residence. *Id.* at pp. 2222-23. When Adams returned later that evening, he was "very upset" and went upstairs. *Id.* at p. 2228. A few minutes later, Dennard entered the apartment holding a black duffel bag and also went upstairs. *Id.* at pp. 2229-30. She then heard Adams yelling at Dennard, who repeatedly declared that he was sorry. *Id.* at pp. 2231-32.[1] When she subsequently asked Dennard what had occurred earlier that

---

[1] At the time, Hilton observed video game controls hanging out of the bag Dennard had brought into her apartment, as well as a clip to a handgun. Trial Tr. at p. 2238.

evening, he informed her that he had attempted to rob Ferrari and that when a delivery man came upon the scene, he and the delivery man fought over a gun, which then discharged. *Id.* at pp. 2241-44.

Deputy United States Marshall Edward McMahon eventually located Dennard on Decatur Avenue in New York City. *Id.* at p. 3581. When Deputy McMahon approached Dennard and asked him what his name was, Dennard replied, "You know who I am." *Id.* at p. 3582. Dennard was then placed under arrest. *Id.* at pp. 3596-98.

The record also establishes that after the murder of Simeon Popov, Dennard contacted Kenyahtah Mayo. Dennard admitted to Mayo that he had shot and killed Popov, *id.* at p. 1225, and asked Mayo if he would dispose of the gun used in the crime. *Id.* at p. 1227. Mayo, however, declined Dennard's request for assistance in disposing of the weapon. *Id.*

Dennard testified on his own behalf, and denied: i) ever owning a gun; ii) having ever committed any robbery; iii) planning any robbery of Ferrari; iv) ever going to the Ostrom Avenue apartment where Popov was killed; and v) shooting Popov. *Id.* at pp. 4069-70.

As a result of the foregoing, on February 26, 2002, an Onondaga County grand jury returned an indictment against Dennard which accused him of murder in the first degree, contrary to New York Penal Law ("Penal Law") § 125.27(1); second degree murder, in violation of Penal Law § 125.25; burglary in the first degree, contrary to Penal Law § 140.30, first degree robbery, in violation of Penal Law § 160.15; and criminal possession of a weapon in the second degree, contrary to Penal Law § 265.03. *See* Indictment No. 2002-0196-1 (Dkt. No. 11-1) at pp. 88-91 ("Indictment").

Dennard's initial jury trial on the foregoing charges commenced on June 2, 2003 in

Onondaga County Court with Onondaga County Court Judge Joseph E. Fahey presiding.

Toward the conclusion of that proceeding, defense counsel moved for a mistrial after lengthy

deliberations, arguing that "the jury, by all accounts ... is hopelessly deadlocked." *See* Dkt. No.

11-46 at p. 17. When the jury subsequently provided the trial court with a note which read:

"[w]e're sorry but after discussion we feel that even with more time we would be unable to come

to a unanimous decision," *id.* at p. 23, the trial judge granted defense counsel's motion for a

mistrial and discharged the jury. *Id.* at pp. 23-24.

Dennard's re-trial on those charges commenced before Judge Fahey on January 12, 2003.

At the conclusion of that trial, the jury found Dennard not guilty of first degree murder, but

guilty of two counts of second degree murder,[2] as well as the first degree burglary and robbery

charges, and the weapons possession charge. Trial Tr. at pp. 4467-69. Dennard appeared before

Judge Fahey for sentencing on February 25, 2004. *See* Transcript of Sentencing of Dominic

Dennard (2/25/04). At that proceeding, the court sentenced Dennard to an aggregate,

indeterminate term of seventy-five years to life imprisonment. *Id.* at pp. 11-13.

Dennard appealed the foregoing to the New York State, Supreme Court, Appellate

Division, Fourth Department. In its decision dated April 20, 2007, that court unanimously

affirmed Dennard's conviction and sentence. *People v. Dennard*, 39 A.D.3d 1277 (4th Dep't),

*leave denied*, *People v. Dennard*, 9 N.Y.3d 842 (2007).

On January 2, 2008, Dennard filed a motion pursuant to New York's Criminal Procedure

Law ("CPL") 440.10 in which he alleged that his conviction was invalid because the Indictment

---

[2] Those counts were based upon the jury's determination that Dennard killed Popov while Dennard committed the crimes of both burglary and robbery. *See* Indictment.

was fatally defective because it only referred to Dennard by his name in the first count of that

accusatory instrument – the first degree murder charge of which he was acquitted. *See* Dkt. No.

11-14 ("January, 2008 CPL Motion"). That application was opposed by the Onondaga County

District Attorney, *see* Dkt. No. 11-15, and in its Decision and Order dated March 24, 2008, the

County Court denied Dennard's January, 2008 CPL Motion. Dkt. No. 11-17 ("March, 2008

Order").

On June 18, 2008, Dennard filed an application seeking a writ of error *coram nobis* in

which he alleged that he received the ineffective assistance of appellate counsel. Dkt. No. 11-18.

The Onondaga County District Attorney opposed that motion, *see* Dkt. No.11-19, and on

October 3, 2008, the Fourth Department denied such application. *See* Dkt. No. 11-20.

On February 12, 2009, Dennard filed his second CPL motion. *See* Dkt. No. 11-23

("February, 2009 CPL Motion"). In that application, Dennard attached a copy of an affidavit

completed by Mayo in which he recanted his trial testimony concerning Dennard's admission of

guilt and which also claimed that Mayo provided false testimony at trial at the request of the

prosecution. *Id.* at Exh. A ("Mayo Aff."). That application asserted that Dennard's conviction

must be vacated because the prosecutor knowingly used perjured testimony at Dennard's re-trial,

and because the District Attorney failed to "expose[] the lie of the witness" to the defense.

February, 2009 CPL Motion. The Onondaga County District Attorney opposed that application,

*see* Dkt. No. 11-24, and on April 17, 2009, Judge Fahey denied Dennard's February, 2009 CPL

Motion ("April, 2009 Order").

**B.**     **This Action**

Dennard commenced the present action, *pro se* by filing a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1 ("Petition"). In that application, Dennard argues that he is entitled to federal habeas intervention because: i) the Indictment that formed the basis of the criminal charges brought against him was defective; ii) he was denied the effective assistance of both trial and appellate counsel because neither counsel argued that the Indictment was defective; iii) the trial court improperly allowed a prosecution witness to offer identification evidence concerning Dennard at his re-trial; iv) his conviction was obtained in violation of the Double Jeopardy Clause of the United States Constitution; v) the evidence was legally insufficient to establish his guilt of any of the charges of which he was convicted; vi) he was deprived of his constitutional right to a fair trial because the prosecutor knowingly elicited perjurious testimony at trial; and vii) the prosecutor failed to disclose to the defense the fact that one of its witnesses provided perjurious testimony. *See* Petition, Grounds One through Seven. Dennard also submitted a memorandum of law in support of his petition which he attached to that pleading. *See* Attachment to Petition ("Supporting Mem.").

On April 30, 2010, the Office of the Attorney General of the State of New York, acting on respondent's behalf, filed a response in opposition to Dennard's petition. Dkt. No. 10. Respondent has also provided the Court with various state court records relating to the criminal matter below (Dkt. No. 11), together with a memorandum of law in opposition to Dennard's petition. Dkt. No. 12 ("Resp. Mem.").

Dennard thereafter submitted a traverse in further support of his petition. *See* Dkt. No. 15 ("Traverse").

This matter is currently before this Court for disposition.

## II.     DISCUSSION

A.    **Procedurally Barred Claims**

In opposing Dennard's petition, respondent argues that Dennard is procedurally barred from obtaining the relief he seeks as to his claims challenging, *inter alia*, the identification evidence offered against Dennard at his trial (*see* Petition, Ground Three), as well his ground for relief challenging the sufficiency of evidence (*see id.*, Ground Five).  *See* Resp. Mem. at pp. 40-45.

It is well established that federal courts will not review procedurally defaulted claims when the state court's decision rejecting such claims rested upon a state law ground that is " ' independent of the federal question and adequate to support the judgment.' "  *Cone v. Bell*, ___ U.S. ___, ___, 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)) (other citation omitted).

In denying Dennard's direct appeal of his conviction, the Appellate Division noted that his claim which alleged that the admission of identification evidence was improper because same was unreliable was "unpreserved for our review" because Dennard had not objected at trial to the admission of such evidence on that basis.  *See Dennard*, 39 A.D.3d at 1278 (citing CPL § 470.05(2)).  The Fourth Department also found that Dennard had "failed to preserve for our review his challenge to the legal sufficiency of the evidence" because counsel had only made a general motion to dismiss the indictment at the conclusion of the prosecution's case against Dennard.  *Dennard*, 39 A.D.3d at 1278.

Where the Appellate Division finds that a party has failed to preserve an issue for appellate review, such a determination "constitutes an independent and adequate state law ground" typically precluding review of such a claim when later raised by a party in a federal

habeas corpus petition. *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999); *Roberts v. Superintendent of the Attica Correctional Facility*, No. 07-CV-285, 2008 WL 3833554, at *9 (W.D.N.Y. Aug. 15, 2008); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *7 (E.D.N.Y. Aug. 7, 2007). To constitute an "adequate and independent" state ground sufficient to preclude federal habeas review of such a claim, the state procedural rule must be "firmly established and regularly followed" by the state courts, and the application of the rule not be "exorbitant." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008); *Murden v. Artuz*, 497 F.3d 178, 192 (2007); *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007).[3]

Both of the procedural rulings which denied the claims Dennard has now asserted in his third and fifth grounds for relief are firmly established and regularly followed by the Appellate Division.

Specifically, in his third ground, petitioner claims, as he did on appeal, that the identification evidence at his re-trial was "improper and unreliable." *See* Petition, Ground Three; *see also* Appellate Brief on Appeal (11/8/06) (Dkt. No. 11-1) ("App. Br.") at pp. 56-57. The Fourth Department denied that claim on appeal, citing CPL § 470.05. *See Dennard*, 39 A.D.3d at 1278. "New York's contemporaneous objection rule, codified at CPL § 470.05, has been found to be a "firmly established" and "regularly followed" procedural bar to relief. *Reyes v. Ercole*, No. 06 CIV. 5525, 2009 WL 790104, at *7 (S.D.N.Y. Mar. 25, 2009) (citing *Richardson*

---

[3] Significantly, it has been observed that even if a state procedural rule is "discretionary," it may still nevertheless serve as an "adequate and independent" state rule barring future habeas claims. *Beard v. Kindler*, ___ U.S. ___, 130 S.Ct. 612, 618 (2009). Moreover, a discretionary rule may be "firmly established and regularly followed" even if the appropriate exercise of discretion may allow consideration of the claim in some cases but not others. *Id.*

*v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007)) (other citations omitted).  Thus, Dennard's claim challenging the identification evidence presented at trial was necessarily denied by the Fourth Department on an adequate and independent state ground.  *See*, *e.g.*, *Reyes*, 2009 WL 790104, at *7-8 (federal habeas claim is procedurally barred where Appellate Division determined that trial counsel failed to object to admission of disputed evidence with adequate specificity).

Additionally, as United States Magistrate Judge Andrew T. Baxter has observed, New York's procedural rule that requires defense counsel to specify the legal grounds upon which a motion challenging the sufficiency of evidence adduced at trial is an adequate and independent state court rule that is both firmly established and regularly followed in New York.  *See Orcutt v. Fillion*, No. 09-CV-205, 2010 WL 2696471, at *3 (N.D.N.Y. June 9, 2010) (citation omitted), *adopted*, *Orcutt v. Fillion*, 2010 WL 2696474 (N.D.N.Y. July 6, 2010) (Kahn, J.).  Thus, petitioner's habeas claim challenging the sufficiency evidence adduced at trial, *see* Petition, Ground Five, was also denied by the Appellate Division on an adequate and independent state ground.

Dennard has therefore procedurally defaulted on both his third and fifth grounds for relief.

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for his procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[4] *See Dixon*, 293 F.3d at 80-81 (citation omitted); *St. Helen v. Senkowski*, 374 F.3d 181, 184

---

[4] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

(2d Cir. 2004) (federal courts may reach the merits of the procedurally defaulted claims only if petitioner can "demonstrate either cause and actual prejudice, or that he is actually innocent") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *3 (E.D.N.Y. Sept. 24, 2008) (federal courts may only consider procedurally barred claims where the petitioner establishes cause for the default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider Dennard's procedurally forfeited claims, he must show that some objective, external factor impeded his ability to comply with the relevant procedural rules. *See Coleman*, 501 U.S. at 753; *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Orcutt*, 2010 WL 2696471, at *4; *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*). Examples of such external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No. 09-0090-pr (2d Cir. Apr. 17, 2009).

Petitioner has not attempted to establish legal cause for his procedural defaults. Significantly, although he filed a Traverse after receiving respondent's opposition memorandum – in which the respondent claimed that Dennard was procedurally barred from obtaining habeas relief on the above claims – petitioner failed to claim – much less establish – any cause for the

11

above defaults.  *See* Traverse.  Since he has not established legal cause for these defaults,[5] this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  *Murray*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that Dennard has failed to establish cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).... "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623.... "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) ... (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674,

---

[5] The petitioner bears the burden of demonstrating cause for his procedural defaults and resulting prejudice.  *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

After having reviewed the evidence adduced at Dennard's re-trial as is discussed more fully *ante*, this Court finds no basis upon which it may properly conclude that he is actually innocent of any of the crimes of which he was convicted.  Since Dennard cannot seek safe harbor from the dismissal of these two grounds under this final exception permitting habeas review of his procedurally defaulted claims, the Court denies, as procedurally forfeited, Dennard's third and fifth grounds for relief.

### B.    Remaining Claims

#### 1.    Deference to be Afforded to State Court Decisions

Enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing 28 U.S.C.§ 2254(d)(1), (2)); *Hawkins v. Costello*, 460 F.3d 238, 242–43 (2d Cir. 2006).

In providing guidance concerning application of this standard, the Second Circuit has observed that:

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362,] 405-06 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's ruling was merely incorrect or erroneous, but instead whether such decision was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). As the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.*, 550 U.S. at 473.

### 2.    Review of Dennard's Claims

14

### i.    <u>Claimed Defects in Indictment</u>

In his initial ground for relief, Dennard argues that the Indictment charged him with first degree murder in the first count of that accusatory instrument, but that such Indictment "failed to charge the petitioner in the body of the other eight counts" and instead only referred to a "defendant." Petition, Ground One. In his supporting memorandum, he argues that such defect establishes that the trial court's "jurisdiction over petitioner was defective." Supporting Mem. at p. 13; *see also* Traverse at pp. 1-5.

In a related claim, Dennard argues that both his trial and appellate counsel rendered ineffective assistance by failing to argue that the Indictment was fatally defective. Petition, Ground Two; *see also* Supporting Mem. at pp. 16-17; Traverse at pp. 5-7.

### a.    <u>Clearly Established Supreme Court Precedent</u>

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const., amend VI. This right applies to the states through the Fourteenth Amendment. *In re Oliver*, 333 U.S. 257, 273-74 (1948). To determine whether an indictment comports with this constitutional requirement, a court must ascertain whether such instrument: (1) contains the elements of the offense charged; (2) provides the accused adequate notice concerning the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to rely on either an acquittal or conviction as a bar to future prosecutions for the same offense. *Russell v. United States*, 369 U.S. 749, 763-64 (1962). As the Supreme Court long ago noted in *United States v. Cruikshank*, 92 U.S. 542 (1876):

> The object of the indictment is to furnish the accused with
> such a description of the charge against him as will enable him to

> make his defense, and avail himself of his conviction or acquittal
> for protection against a further prosecution for the same cause; and
> second, to inform the court of the facts alleged, so that it may
> decide whether they are sufficient in law to support a conviction if
> one should be had.  For this, facts are to be stated, not conclusions
> of law alone.  A crime is made up of acts and intent; and these
> must be set forth in the indictment with reasonable particularity of
> time, place, and circumstances.

*Id.* at 588.

### b.     <u>Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent</u>

Dennard asserted his challenge relating to the propriety of the Indictment in his January, 2008 CPL Motion.  *See id.*  Judge Fahey denied that application, noting that such accusatory instrument, *inter alia*, charged only one individual – Dennard – with committing the crimes delineated in each count of the Indictment, and that each such count specifically referenced the exact provision of the Penal Law he was charged with violating.  *See* March, 2008 Order at pp. 1-2.  Judge Fahey concluded that "[t]he indictment provided [Dennard] with 'fair notice', and was not jurisdictionally defective."  *Id.* at p. 2.

An indictment "which tracks the applicable state statute affords defendant fair notice of the crime with which he is charged."  *McMoore v. Miller*, No. 98-CV-1915, 2002 WL 975305, at *11 (N.D.N.Y. Apr. 19, 2002) (Sharpe, M.J.) (citations and internal quotation omitted), *adopted* (N.D.N.Y. May 17, 2002) (Kahn, J.), *appeal dismissed*, *McMoore v. Miller*, No. 02-2414 (2d Cir. Jan. 23, 2003).  Moreover, a defect in a state indictment can only form the basis for federal habeas relief if it falls below basic constitutional standards.  *See Gilfus v. Vargason*, No. 04-CV-188, 2008 WL 65579, at *7 (N.D.N.Y. Jan. 3, 2008) (Hurd, J.) (citing *Carroll v. Hoke*, 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)).

In the related criminal matter, the Indictment named Dennard as the sole defendant in that accusatory instrument in both the caption as well as the first count of the Indictment. *See* Indictment. Each of the subsequent counts in the Indictment provided: "AND THE AFORESAID GRAND JURY by this Indictment further accuses the defendant" of the other counts delineated in that instrument. *See* Indictment, Counts Two through Nine (typeface in original). It also contained the elements of each of the offenses with which Dennard was charged, and provided him with the specific statute of the CPL he was accused of violating. That instrument plainly afforded him more than adequate notice of the charges against which he was required to defend.[6] Moreover, the Indictment was plainly sufficient to protect Dennard against double jeopardy on the charges contained therein – appellate counsel's first argument in his brief appealing Dennard's conviction alleged that his right to Double Jeopardy was violated by his re-trial on the charges returned against Dennard in the accusatory instrument. *See* App. Br. at pp. 53-56. This Court concludes that the subject Indictment fell comfortably within the minimum requirements established by the Supreme Court relating to accusatory instruments discussed *ante*, *see Russell*, 369 U.S. at 763-64, and plainly afforded Dennard fair notice of the crimes with which he was charged.

In light of this Court's determination that the Indictment was not defective, Dennard also cannot prevail on his second ground for relief, which, as noted *ante*, asserts that both trial and appellate counsel rendered ineffective assistance by failing to challenge the propriety and/or

---

[6] It has been properly observed that a claim that an indictment is fatally defective because it only refers to the accused as "the defendant" after earlier naming him in that instrument "borders on the frivolous." *U. S. ex rel. Nelson v. Wyrick*, 422 F.Supp. 139, 140 (D.C. Mo. 1976).

legal sufficiency of the Indictment.  Specifically, petitioner cannot demonstrate that either counsels' failure to assert such a challenge concerning the Indictment fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms.  Nor can Dennard demonstrate that he was prejudiced by the failure of either counsel to assert such an argument, which, in the context of the present action, requires Dennard to demonstrate that there is a reasonable probability that, but for counsel's failure to articulate such an argument, the outcome of either his trial or his appeal would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (the proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland*).

        Based upon the foregoing, this Court denies Dennard's first and second grounds for relief.

### ii.    <u>Double Jeopardy Claim</u>

    In support of his Double Jeopardy claim, Dennard argues that at his re-trial, additional evidence of his guilt was heard by the jury that ultimately convicted him.  *See* Petition, Ground Four.  Dennard specifically claims that at his re-trial, the prosecution presented evidence regarding the "prejudicial alias" by which Dennard was known – "D-Murder."  Supporting Mem. at p. 20.  He also notes that at his re-trial, a prosecution witness made an in-court identification of Dennard notwithstanding the fact that such identification evidence was not presented to the jury at his initial trial.  *Id.*  Dennard argues that the above evidence, as well as other differences in the evidence offered by the prosecution at his re-trial *vis-à-vis* the evidence presented by the District Attorney at Dennard's initial trial, wrongfully afforded the prosecutor the opportunity "to present ... extra new insights into proof against" Dennard which in turn "violated the protection

clause of double jeopardy." *Id.* at p. 21.

### a.    Clearly Established Supreme Court Precedent

The Fifth Amendment's prohibition on Double Jeopardy protects persons from being prosecuted twice for the same criminal offense. *See* U.S. Const., amend. V.; *Brown v. Ohio*, 432 U.S. 161, 165 (1977).[7]  When a defendant has violated two separate criminal statutes, the protection against Double Jeopardy is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other. *Rutledge v. United States*, 517 U.S. 292, 297 (1996).  However, it is well-established law that a re-prosecution following a mistrial at a criminal trial does not violate the Double Jeopardy Clause. *See United States v. Perez*, 22 U.S. [9 Wheat.] 579, 580 (1824); *Logan v. United States*, 144 U.S. 263, 297-298 (1892); *see also Oregon v. Kennedy*, 456 U.S. 667, 670 (1982).  As the Supreme Court noted in *Arizona v. Washington*, 434 U.S. 497 (1978):

> without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial.  This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

*Id.* at 509.

### b.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

As noted *ante*, Dennard's initial trial terminated after the trial court granted defense counsel's request for a mistrial.  Dkt. No. 11-46 at pp. 23-24.  Because that application was granted before the jury reached any verdict in his initial trial, it is plain that Dennard could be

---

[7] The Due Process Clause of the Fourteenth Amendment extends Double Jeopardy protection to a defendant in a state criminal proceeding. *Benton v. Maryland*, 395 U.S. 784, 793-96 (1969).

properly re-tried on the charges brought against him in the Indictment. *Arizona*, 434 U.S. at 509; *Richardson v. United States*, 468 U.S. 317, 323 (1984) (where a mistrial has resulted from a hung jury and there has been no judicial finding of insufficiency, "re-trial is not barred by the Double Jeopardy Clause.").

Next, as to Dennard's argument that his Double Jeopardy rights were violated because the Government was allowed to present different evidence at the re-trial, *see* Supporting Mem. at pp. 20-21, this Court notes that the Double Jeopardy Clause does not prevent the prosecution from strengthening its case following a mistrial declared by the trial court under circumstances similar to those present in the criminal matter below. *See United States v. Douglas*, 874 F.2d 1145, 1155 n.13 (7th Cir. 1989) (the fact that Government's case at second trial was stronger than proof presented at initial trial "does not run afoul of the Double Jeopardy Clause"); *see also United States v. Kimberlin*, 805 F.2d 210, 230-31 (7th Cir. 1986).

Since nothing before this Court suggests that petitioner's conviction on re-trial ran afoul of the Double Jeopardy Clause, Dennard has wholly failed to establish that the Appellate Division's decision denying this aspect of his appeal, *see Dennard*, 39 A.D.3d at 1278, is either contrary to, or represents an unreasonable application of, the clearly established Supreme Court precedent referenced above. The Court therefore denies his fourth ground for relief.

### iii.    <u>Perjurious Testimony</u>

Petitioner's final grounds for relief are based upon his contention that his conviction was obtained through the use of perjurious testimony. Specifically, he claims in his sixth ground that subsequent to his conviction, one of the prosecution's witnesses recanted his trial testimony which in turn demonstrates that such witness "gave false testimony in both of petitioners [*sic*]

trials at the insistence of the prosecution."  Petition, Ground Six; *see also* Supporting Mem. at pp. 23-25; Traverse at pp. 7-9.  In a related claim, Dennard argues that the prosecutor failed to disclose exculpatory evidence to Dennard, with such "evidence" being the prosecution's knowing use of perjurious testimony at Dennard's trial.  *Id.*, Ground Seven; *see also* Supporting Mem. at pp. 25-27; Traverse at pp. 7-9.

### a.      <u>Clearly Established Supreme Court Precedent</u>

The Supreme Court has noted that a conviction obtained through the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted).  Additionally, "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  Nevertheless, it is well-settled jurisprudence that the "mere recantation of testimony is [not] in itself ground for invoking the Due Process Clause against a conviction."  *Hysler v. State of Florida*, 315 U.S. 411, 413 (1942).

### b.      <u>Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent</u>

Petitioner asserted his claims alleging the prosecutorial misconduct discussed *ante* in his February, 2009 CPL Motion.  In that application, Dennard argued that subsequent to his conviction, he received a copy of an affidavit executed by Mayo in which that witness recanted his trial testimony.  *Id.* at p. 1.  In such affidavit, Mayo states that he "made false statements" at Dennard's trial, and further that the prosecutor "made me lie by saying that I heard Mr. Den[n]ard confess to a murder that was set out to be a robberie [*sic*] in Syracuse, N.Y."  *See*

21

Mayo Aff.  In opposing the February, 2009 CPL Motion, an assistant Onondaga County District Attorney filed an affirmation under penalty of perjury in which he, *inter alia*, denied Dennard's allegations that the prosecutor influenced and/or threatened Mayo to testify falsely at trial, and further denied Dennard's claims that the prosecutor used perjurious testimony at that proceeding. Dkt. No. 11-24 at p. 9.  In denying Dennard's February, 2009 CPL Motion, the County Court found the testimony provided by Mayo in which he recanted his trial testimony to be "at the very least, unreliable."  *See* April, 2009 Order at p. 2.  That court further disagreed with Dennard's characterization of Mayo's trial testimony as "crucial," and instead noted that the evidence of Dennard's guilt was also established by the "testimony of an eyewitness who made an in-court identification of [Dennard] as the shooter and the detailed testimony of an accomplice."  *Id*.  That court concluded that evidence contained in the affidavit of Mayo was merely "impeaching or contradictory evidence," and that Dennard failed to demonstrate that the "impeaching testimony of this recanting witness would 'probably change' the verdict if introduced at trial."  *Id.*

To prevail on the above grounds, Dennard must, as a threshold matter, prove that Mayo in fact committed perjury Dennard's trial.  *Richard v. Girdich*, No. 9:03-CV-920, 2009 WL 2045685, at *9 (N.D.N.Y. July 10, 2009) (Scullin, S.J.) (citation omitted), *appeal dismissed*, *Richard v. Girdich*, No. 09-3857-pr (2d Cir. Jan. 7, 2010).  The Second Circuit has opined that in considering habeas claims based upon the recantation of trial testimony, the habeas court may not limit its inquiry solely to the issue of the credibility of the witness's recantation, but must instead review the trial testimony of the recanting witness and, after weighing all of the evidence before it, determine whether the petitioner is entitled to habeas relief on the recantation claim. *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003).

In conjunction with these claims, Mayo's trial testimony at Dennard's second trial, as well as Mayo's subsequent affidavit recanting that testimony, has been reviewed. At the re-trial, Mayo provided detailed testimony regarding his interaction with Dennard on the day he admitted he had killed Popov. Trial Tr. at pp. 1224-30.[8] This Court has also reviewed the affidavit provided by Mayo in conjunction with Dennard's February, 2009 CPL Motion. Based upon that review, this Court endorses the determination of the trial court in its April, 2009 Order which found Mayo's recanting affidavit to be unpersuasive. April, 2009 Order at p. 2.[9] In arriving at this determination, this Court notes that the trial court was in the best position to evaluate and compare Mayo's trial testimony with the subsequent testimony presented in his recanting affidavit. *See Grotto v. Herbert*, No. 9:98-CV-0627, 2001 WL 1860882, at *5 (N.D.N.Y. Jan. 24, 2001) (Report-Recommendation of Sharpe, M.J.) ("trial court's findings of fact concerning such issues are 'entitled to a presumption of correctness in [a] federal habeas proceeding' ") (quoting *May v. Collins*, 955 F.2d 299, 314-15 (5th Cir. 1992)), *report-recommendation not approved*, *Grotto v. Herbert*, 203 F.Supp.2d 142 (N.D.N.Y. 2002), *rev'd*, *Grotto v. Herbert*, 316 F.3d 198 (2d Cir. 2003); *see also Baldree v. Johnson*, 99 F.3d 659, 663 (5th Cir. 1996) ("[t]he level of insulation the law grants to a skeptical trial judge's assessment of recanting affidavits reflects the notion that trial judges are in the best position to compare a witness's earlier testimony with his new version of the facts") (citation and internal quotation marks omitted).

---

[8] He provided similar testimony when he was cross-examined by defense counsel about Mayo's interaction with Dennard. Trial Tr. at pp. 1395-99.

[9] The trial court's determination that Mayo's recantation was unpersuasive is entitled to deference by this Court. *Lewis v. Dufrain*, 392 F.Supp.2d 498, 505-06. (W.D.N.Y. 2005). Additionally, it has been properly observed that recantation evidence is "inherently unreliable." *Penick v. Filion*, 144 F.Supp.2d 145, 148 (E.D.N.Y. 2001).

Based upon all of the foregoing, this Court concludes that Dennard has failed to establish that any perjurious testimony was offered at his criminal trial.  *E.g.*, *Mohsin v. Ebert*, 626 F.Supp.2d 280, 305-06 (E.D.N.Y. 2009) (where court is unpersuaded by recantation of trial testimony, it may properly reject habeas petitioner's claim of perjury based upon such recantation).

He has also therefore necessarily failed to establish the claim he has asserted in his seventh and final ground for relief, i.e., that the prosecutor wrongfully withheld from the defense evidence which established that Mayo committed perjury at petitioner's trial.  Specifically, this Court finds that such claim is supported by nothing but mere conjecture on the part of Dennard, as well as the affidavit of Mayo that has aptly been characterized as "unreliable."  April, 2009 Order at p. 2.  By failing to provide sufficient evidence which establishes this ground for relief, Dennard has failed to shoulder his burden of proof as to this claim.  *See Moss v. Phillips*, No. 03-CV-1496, 2008 WL 2080553, at *6 (N.D.N.Y. May 15, 2008) (Kahn, J.) (citing *Gillis v. Edwards*, 445 F.Supp.2d 221, 233 (N.D.N.Y.2006) (McCurn, S.J.)).

Moreover, as Senior Judge Neal P. McCurn has observed in *Campbell v. Greene*, 440 F.Supp.2d 125 (N.D.N.Y. 2006), *appeal dismissed*, *Campbell v. Greene*, No. 08-2568pr (2d Cir. Oct. 28, 2008):

> even assuming, arguendo, that some of the witnesses at [petitioner's] trial committed perjury, the undersigned notes that "[a] showing that perjured testimony was introduced at trial, without more, does not establish a violation of due process and does not warrant habeas relief."  *Chamberlain v. Mantello*, 954 F.Supp. 499, 507 (N.D.N.Y. 1997) (Kahn, J.) (citing *Sanders v. Sullivan*, 863 F.2d 218, 222 (2d Cir. 1988)).  Rather, before relief may be granted on such a claim, the petitioner must demonstrate that the perjured testimony was "material," i.e., that the receipt of such testimony "undermine[d] confidence in the outcome of the trial."  *Chamberlain*, 954 F.Supp. at 507 (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481

(1985)). Where the prosecution is unaware of the claimed perjury, the petitioner must establish that the jury "probably would have acquitted [the defendant] in the absence of the false testimony." *United States v. Moore*, 54 F.3d 92, 99 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Johnson* [*v. Walsh*, No. 01-CV-1651], 2005 WL 928616, at *16 [N.D.N.Y. Apr. 20, 2005) (DiBianco, M.J.)] (citing *United States v. Wong*, 78 F.3d 73, 81 (2d Cir. 1996)) (other citations omitted).

*Campbell*, 440 F.Supp.2d at 147.

Although Mayo undeniably provided testimony favorable to the prosecution, it does not appear to this Court as though the receipt of that testimony, even if same had been proven by petitioner to the perjurious, "undermined confidence in the outcome of the trial." To the contrary, as the County Court observed in denying Dennard's February, 2009 CPL Motion, there was a substantial evidence of Dennard's guilt adduced at trial separate and apart from the testimony offered by Mayo. *See* April, 2009 Order at p. 2; *see also ante* at pp. 2-4 (this Court's description of some of the evidence presented at trial establishing Dennard's guilt).

In sum, Dennard has simply failed to establish that the County Court's denial of his claims which alleged that the prosecutor knowingly used perjurious testimony at Dennard's trial, and that the District Attorney was aware of the "fact" that Mayo provided false testimony at Dennard's re-trial and thereafter improperly failed to advise him of same, *see* April, 2009 Order; *see also* Petition, Grounds Six, Seven, is either contrary to, or represents an unreasonable application of, relevant, clearly established Supreme Court precedent. This Court therefore denies his sixth and seventh grounds for relief.

## III.    CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

Unless a circuit justice or judge issues a certificate of

> appealability, an appeal may not be taken to the court of appeals
> from –
>
> > (A) the final order in a habeas corpus proceeding in
> > which the detention complained of arises out of
> > process issued by a State court ....[10]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since Dennard has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED,** that Dennard's petition for a writ of habeas corpus (Dkt. No. 1) is **<u>DENIED</u>** and **<u>DISMISSED</u>**; and it is further

**ORDERED** that no certificate of appealability shall issue because Dennard has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon the parties to this action in accordance with this District's Local Rules; and it is further

**ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

this Memorandum-Decision and Order filed by any party).

Date: September 28, 2010

United States District Court Judge